UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

LARA CURTO,

               Plaintiff,

    -v.-

MEDICAL WORLD COMMUNICATIONS, INC.,
ROMAINE PIERSON PUBLISHERS, INC. f/k/a
ROMAINE PIERSON ACQUISITION CO., JOHN
J. HENNESSY, JAMES GRANATO, DANIEL
PERKINS, JAMES KING, ROBERT ISSLER, and
EUGENE CONSELYEA.

               Defendants.
_____

**MEMORANDUM OF DECISION
AND ORDER**
03-CV-6327 (DRH)(MLO)

**Appearances:**

**For the Plaintiff:**
**ANDREW E. CURTO**
Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP
330 Old Country Road
Suite 301
Mineola, New York 11501

**Lois Carter Schlissel**
Meyer Suozzi English & Klein, P.C.
1505 Kellum Place
Mineola, New York 11501

**For the Defendant James King:**
**Aron M. Schwartz**
Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, LLP
Metro Corporate Campus One, P.O. Box 5600
Woodbridge, New Jersey 07095-0988

**For the Defendants Medical World Communications, Inc., Romaine Pierson Publishers,
Inc. f/k/a Romaine Pierson Acquisition Co., John J. Hennessy, James Granato, Daniel
Perkins, Robert Issler, and Eugene Conselyea:**
**James P. Anelli**
**Elizabeth Wizeman Dollin**
St. John & Wayne, L.L.C.
Two Penn Plaza East

Newark, New Jersey 07102

**HURLEY, District Judge:**

Presently before the Court are the motions by defendants Medical World Communications, Inc. ("MWC"), Romaine Pierson Publishers, Inc. f/k/a Romaine Pierson Acquisition Co. ("Romaine Publishers"), John J. Hennessy ("Hennessy"), James Granato ("Granato"), Daniel Perkins ("Perkins"), Robert Issler ("Issler"), Eugene Conselyea ("Conselyea"), and James King ("King") (collectively, "Defendants") to dismiss the Amended and Supplemental Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, the motions are granted in part and denied in part.[1]

## BACKGROUND

The relevant facts alleged by Plaintiff, which are accepted as true for purposes of this motion, are as follows.  Plaintiff, at all time relevant, was a resident of Glenwood Landing, Nassau County, New York.  (Am. and Supplemental Compl. ¶ 18.)  Plaintiff was hired by Romaine Publishers in 1994, which was then located in Port Washington, New York.  (*Id.* ¶ 27.)  In or about August 1995, Romaine Publishers was acquired by MWC.  (*Id.* ¶ 31.)  As part of that acquisition, Plaintiff became an employee of MWC.  (*Id.* ¶ 33.)  In the Fall of 1996, MWC moved its offices to Westbury, New York and Plaintiff continued her employment at this new location.  (*Id.* ¶ 32.)  In May 2002, MWC closed its Westbury office and Plaintiff began to work from a home office established at her residence in New York.  (*Id.* ¶ 38.)  While working from home, Plaintiff traveled to MWC's headquarters in New Jersey once a month for, inter alia,

---

[1]  Plaintiff withdraws her fourteenth cause of action against defendant James Granato. (Pl.'s Opp'n Mem. at 32.)  Accordingly, this claim is hereby dismissed.

meetings and sales training. (*Id.* ¶ 40.) Commencing in February 2003, Plaintiff was required to work every Monday at MWC's New Jersey office. (*Id.* ¶ 109.)

Plaintiff alleges that in June 2002, a co-worker, Emily McCardell ("McCardell"), was sexually harassed by Granato while the two were attending a convention in San Diego, California. (*Id.* ¶¶ 52-68.) While Plaintiff did not witness the alleged harassment, she alleges that she was told by McCardell that Granato was drunk and behaving in a sexually inappropriate manner. (*Id.* ¶ 64.) Plaintiff further alleges that she reported the incident to Perkins, her supervisor, on July 15, 2002. (*Id.* ¶¶ 46, 72-74.)

Thereafter, in August 2002, Plaintiff attended another convention where Granato's behavior, including his drinking and sexual harassment of co-workers, was further discussed among Plaintiff, Perkins, McCardell, and Maurice Nogueira, a sales representative. (*Id.* ¶ 76.) Plaintiff questioned Perkins as to why no action was being taken with regard to Granato, whom she labeled as a "major liability to the company." (*Id.* ¶¶ 77-78.) Perkins responded by stating that he was tired of Plaintiff "threatening litigation" and fired Plaintiff (*Id.* ¶¶ 79-81.) Later that evening, Perkins rehired and then again fired Plaintiff. (*Id.* ¶ 82.) The following day, Perkins rehired Plaintiff. (*Id.* ¶ 83.) Immediately thereafter, on or about August 28, 2002, Plaintiff was stripped of her title as Associate Publisher without any explanation. (*Id.* ¶ 84.)

Plaintiff alleges that over the ensuing months and as a direct result of her reporting the alleged McCardell-Granato incident, Defendants instituted a systematic effort of unjustifiably criticizing her performance and making her working conditions increasingly difficult. (*Id.* ¶¶ 85- 148.) Specifically, Plaintiff alleges that this retaliation came in the form of

holdbacks on commissions allegedly due her, false accusations lodged against her by King, disparate treatment based on her gender, the wrongful institution of a performance review which was meant to criticize her, a pretextual plan to terminate her employment, the reallocation of a desk she once used once a week to a new employee, her co-workers' refusal to speak to her, the reassignment of certain accounts, her exclusion from conventions, her wrongful placement on probation, actions by King which prevented her from procuring sales, and the wrongful withholding of expenses. (*Id.* ¶¶ 51, 102-03, 113-32, 142-68, 180, 185-85, 192-97, 199, 205-20, 222-24, 226, 263.)

On June 4, 2003, Plaintiff was placed on probation. (*Id.* ¶ 150.) The reasons given by management for her probation were "1) chronic tardiness to MWC meetings, 2) unsatisfactory levels of sales activity (appointments), 3) poor account penetration, and 4) unsatisfactory performance in meeting sales goals (under 70% of plan for June)." (*Id.* ¶ 155.) On June 26, 2003, Plaintiff filed a formal complaint with Human Resources alleging that she was being retaliated against as a result of her reporting of the McCardell-Granato incident. (*Id.* ¶ 157.) On July 7, 2003, Human Resources advised Plaintiff that it had conducted a thorough investigation into her complaint and concluded that no sexual harassment or inappropriate behavior had occurred between Granato and McCardell. (*Id.* ¶ 169.) Upon Plaintiff's presentation of new evidence to Human Resources, MWC hired an outside consultant to re-investigate Plaintiff's claim of retaliation as well as the alleged sexual harassment of McCardell. (*Id.* ¶ 175.) The outside consultant's report acknowledged that "there may have been inappropriate behavior at that conference" by Granato towards McCardell but failed to address Plaintiff's claim of retaliation. (*Id.* ¶¶ 176-77.) Plaintiff was ultimately terminated on October

24, 2003, allegedly based upon Defendants' gender discrimination and retaliation. (*Id.* ¶ 247.)

**DISCUSSION**

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005). The Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999); *Jaghory v. New York State Dep't. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

Here, Defendants move to dismiss counts three, four, five, six, thirteen, fifteen, and sixteen, as well as all claims against Romaine Publishers and Conselyea. Defendants also move to strike paragraph 165 of the Amended and Supplemental Complaint. The Court will address Defendants' arguments in turn.

I. ***Defendants' Motion to Dismiss the Amended and Supplemental Complaint as Against Romaine Publishers is Denied***

Defendants contend that all claims should be dismissed as to Romaine Publishers because the Amended and Supplemental Complaint fails to attribute any specific acts to this corporate defendant. Instead, Defendants argue, Plaintiff specifically attributes all wrongful acts to either MWC or the individually named defendants.

The Amended and Supplemental Complaint states that "[f]or purposes of pleading

the claims herein, MWC and ROMAINE [PUBLISHERS] will be collectively referred to as

"MWC" unless otherwise stated."  (Am. and Supplemental Compl. ¶ 20 n.1.)  In their answer,

Defendants admit that MWC was Plaintiff's employer but that Romaine Publishers, as a

subsidiary of MWC, paid her wages.  (Answer ¶¶ 33, 232.)  Because every allegation against

MWC is also pleaded against Romaine Publishers, and because Plaintiff, at this early state of the

litigation, cannot be expected to more precisely articulate the relationship between the two

companies or their roles in Plaintiff's claims, Defendants' motion to dismiss the Amended and

Supplemental Complaint as to Romaine Publishers is denied.

**II.     *Defendants' Motion to Dismiss the Third and Fourth Causes of Action is Denied***

      **A.     *Defendants' Non-resident Status Does Not Bar Plaintiff's Claims***

The third and fourth causes of action allege retaliation and gender discrimination

in violation of the New York State Human Rights Law ("NYSHRL"), New York State Executive

Law §§ 296 et seq.  It is well settled that the NYSHRL does not provide a cause of action to a

New York resident for discriminatory acts committed outside of New York by a foreign

corporation.  *See, e.g.*, *Wilcox v. PRC of New York L.P.*, No. 95-CV-1292, 1997 WL 141682, at

*4 (N.D.N.Y. Mar. 24, 1997).  Here, it is undisputed that none of the Defendants is either a New

York resident or a domestic corporation.  Thus, Plaintiff's claim is viable only if she alleges that

the discriminatory acts occurred in New York.

In *Sherwood v. Olin Corp.*, 772 F. Supp. 1418 (S.D.N.Y. 1991), the court

explained that:

> In order to allege discrimination within New York, [plaintiff] must
> allege more than her New York residence; she must allege that an
> unlawful discriminatory practice originated within New York state,
> that a discriminatory practice affected the terms, conditions, or

-6-

> privileges of [her] employment in New York, or that [defendant]
> retaliated against her because she complained about such
> discriminatory practices.

*Id.* at 1425-26 (internal quotation marks and citations omitted); *see also Wilcox*, 1997 WL 141682, at *5 (citing *Sherwood* test).  Here, Plaintiff argues that her pleading satisfies the second of these grounds, to wit, that Defendants' discriminatory and harassing conduct "affected the terms, conditions, or privileges of [her] employment in New York."  *Sherwood*, 772 F. Supp. at 1426.  Defendants counter that their alleged discriminatory conduct does not fall within the reach of *Sherwood* or *Wilcox* because to the extent it affected Plaintiff's employment in New York, it did so at her *home* where she worked, as opposed to an office in the traditional sense where Plaintiff had to interact with other employees.  Thus, they argue, "[t]o impose NYSHRL liability on non-resident Defendants simply because Plaintiff was allowed to work from her home is overreaching."  (Defs.' Reply Mem. at 3.)  They contend that *Wilcox* is distinguishable because in that case, the plaintiff claimed that her supervisor's sexual harassment of her outside of New York created a hostile work environment at the company's offices in New York where she had to interact with her supervisor.  The Court disagrees.  In *Wilcox*, the court stated that

> a plaintiff need not allege that the discrimination originated in New
> York if she alleges, as [plaintiff] does, that the discriminatory
> practice affected the conditions of her employment in New York.
> Although [plaintiff's] amended complaint provides no details
> about how [defendant's] harassing conduct affected her
> employment, her allegations that this conduct made her job in New
> York more difficult to perform are sufficient to rebut defendants'
> argument that . . . her New York Human Rights Law claims [are
> barred].

*Wilcox*, 1997 WL 141682, at *5.  Although the plaintiff in *Wilcox* did not work at a home office, there is no language in that case to suggest that its reasoning would not apply to the instant case

where Plaintiff has similarly alleged that Defendants' harassing and discriminatory conduct has "made her job in New York more difficult to perform." *Id.* (*See, e.g.*, Am. and Supplemental Am. and Supplemental Compl. ¶¶ 85, 99.) Moreover, Defendants cite no precedent for their proposition that just because Plaintiff worked out of her home in New York, her work conditions were not affected within the ambit of the NYSHRL. Accordingly, the court denies Defendants' motion to dismiss Plaintiff's third and fourth causes of action.

### B.     *Defendants Hennessy and Granato*

Defendants contend that the third and fourth causes of action for retaliation and gender discrimination, respectively, as against Hennessy and Granato should be dismissed because: (1) there are no allegations to support any inference that Hennessy actively participated in the alleged retaliation and discrimination; and (2) there is no nexus between Plaintiff's protected activity and Granato's alleged misconduct. Because the Court finds that Plaintiff's allegations satisfy the requirements of Rule 12(b)(6), Defendants' motion in this regard is denied.

### 1.     *The Court Denies Defendants' Motion to Dismiss The Third and Fourth Causes of Action as to Hennessy*

Plaintiff relies on the following paragraphs of the Amended and Supplemental Complaint to support her claim against Hennessy:

> 101. Upon information and belief, ISSLER acted in concert with PERKINS and KING in their efforts to retaliate and discriminate against [Plaintiff] with the full knowledge and direction of the CEO HENNESSY.

> 178. On August 18, 2003, [Plaintiff] was called into a meeting with Human Resources and given a memo dated August 14, 2003, from the CEO, HENNESSY, that provided a summary of the outside consultant's findings from the second investigation of

> [Plaintiff's] complaint.
>
> 179. The memo attacked [Plaintiff's] character alleging an alcohol abuse problem and otherwise defaming [Plaintiff] and was silent with regard to the issue of [Plaintiff's] complaint of retaliation."
>
> 274. Furthermore, MWC knew, or had reason to know, or should have known that retaliatory conduct was taken against [Plaintiff] as the conduct was committed by senior management, and upon information and belief, under the direction of the CEO, Hennessy.

(Am. and Supplemental Compl. ¶¶ 101, 178-79, 274, 286.) Under the NYSHRL, it is unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law 296(6). The Second Circuit has interpreted this provision to mean that an employee may be sued individually if he or she "actually participates in the conduct giving rise to a discrimination claim." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1985), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998). Here, the conduct giving rise to Plaintiff's claims stems from a purported systematic effort by Defendants during the course of almost one and a half years to criticize Plaintiff and make her working conditions increasingly difficult in retaliation against Plaintiff's report of the sexual harassment of a co-worker by a supervisor as well as in discrimination against her because of her gender. The Amended and Supplemental Complaint alleges numerous examples of this conduct, committed by various defendants, all of which were allegedly perpetrated under the direction of Hennessy, the CEO. After construing the facts in the light most favorable to Plaintiff, the Court finds that this allegation, together with Hennessy's August 14, 2003 memorandum, sufficiently allege that Hennessy "actually participated in the conduct giving rise to" Plaintiff's claims. From these allegations, a trier of fact could infer that Hennessy was part of the systematic discriminatory effort by Defendants to terminate Plaintiff.

Accordingly, Hennessy's motion to dismiss the third and fourth causes of action is denied.

### 2. The Court Denies Defendants' Motion to Dismiss The Third and Fourth Causes of Action as to Granato

Plaintiff alleges that apart from Granato's alleged sexual harassment of McCardell, Granato sent a false e-mail to Perkins, King and the President of MWC, stating that Plaintiff had made an erroneous statement regarding a project sponsored by one of MWC's clients. (Am. and Supplemental Compl. ¶ 124.) The e-mail stated that Plaintiff's actions were "unethical and detrimental to the good standing of the journal and that [Plaintiff's] conduct is reprehensible." (*Id.* ¶ 125.) Plaintiff further alleges that she was told by King not to respond to Granato's email and that he would take care of it, although he never did. (*Id.* ¶¶ 127-28.) Granato argues that Plaintiff's claims must be dismissed because there is no nexus between his e-mail and the allegedly adverse actions taken against Plaintiff.

In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (citations omitted). Granato asserts that the e-mail was sent on April 3, 2003, ten months after the McCardell incident and six months before Plaintiff's employment was terminated. To the extent this allegation can be inferred to be part of an overall scheme of discrimination to undermine Plaintiff's reputation and fabricate multiple claims of wrongdoing as a pretext for later termination, Plaintiff's pleading is sufficient to withstand Granato's motion. Reading Plaintiff's Amended and Supplemental Complaint in the totality, it may reasonably be inferred

that Defendants engaged in a campaign of abuse and retaliation, consisting of numerous

individual acts, that all contributed to the allegedly adverse actions taken by Defendants.

Accordingly, Granato's motion to dismiss the third and fourth causes of action is denied.[2]

### III.    *Plaintiff's Fifth and Sixth Causes of Action Are Dismissed*

In her fifth and sixth causes of action, Plaintiff seeks monetary damages for

Defendants' alleged discriminatory and retaliatory acts in violation of the New York City

Human Rights Law ("NYCHRL").  In order to state a claim under the NYCHRL, Plaintiff must

allege that the defendants "intentionally discriminated against them within New York City."

*See, e.g., Casper v. Lew Lieberbaum & Co.*, No. 97 Civ. 3016, 1998 WL 150993, at *4

(S.D.N.Y. Mar. 31, 1998).  "The fact that certain acts leading to discrimination may occur in

New York City will not necessarily give rise to a claim under the [NYCHRL]." *Salvatore v.*

*KLM Royal Dutch Airlines*, No. 98 CV 2450, 1999 WL 796172, at *16 (S.D.N.Y. Sept. 30,

1999).  Rather, to determine the location of the discrimination under the NYCHRL, courts look

to the location of the impact of the offensive conduct.  *See id.; Lightfoot v. Union Carbide Corp.*,

01 CV 2252, 1994 WL 184670, at *5 (S.D.N.Y. May 12, 1994).

In support of her claim, Plaintiff relies on paragraphs 300 and 304 of her

Amended and Supplemental Complaint wherein she alleges that "many wrongful acts committed

against [Plaintiff] by the Defendants, some of which are complained of herein, occurred within

---

[2]  In his reply papers, Granato states for the first time, without citing any precedent, that
Plaintiff's claims against him under the NYSHRL should be dismissed because he "does not
have an ownership interest in MWC nor did he make decisions concerning Plaintiff's
employment."  (Defs.'s Reply Mem. at 4.)  This argument has been waived for purposes of the
present motion.  *See Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 n.4 (2d Cir. 1998)
(failure to raise argument until reply brief constitutes waiver).

the City of New York." (Am. and Supplemental Compl. ¶¶ 300, 304.)  Plaintiff's general

allegations, which do not identify any particular acts that allegedly occurred in New York City,

are insufficient to state a claim under the NYCHRL.  In Plaintiff's Memorandum of Law,

however, Plaintiff cross-moves for leave to amend so that she may separately state the location

of Defendants' allegedly wrongful acts.  She contends that she visited clients in New York City

on a weekly basis, was subjected to abuse by Granato at work-related functions held in New

York City, and had meetings with her superiors in New York City, which all resulted in her

losing accounts and commission at that locale.  Defendants oppose Plaintiff's application to

amend on prejudice and timeliness grounds.

 In the Court's view, given that Plaintiff may be able to state cognizable claims

under the NYCHRL, Plaintiff should be given an opportunity to formally move for leave to

amend so that these issues can be properly presented to the Court.  Accordingly, Plaintiff's fifth

and sixth causes of action are dismissed for failure to state a claim.  However, should Plaintiff

seek to replead these claims, the Court hereby grants Plaintiff leave to move to amend for this

limited purpose only.  Any such motion shall be served on or before August 16, 2005; any

opposition papers shall be served on or before August 30, 2005; and any reply papers shall be

served on or before September 6, 2005, at which time Plaintiff shall file all papers with the

Court.

## IV. *The Thirteenth Cause of Action Against King is Dismissed in Part*

 The thirteenth cause of action is asserted against King only and asserts a claim for

slander per se.  "The elements of a cause of action for slander under New York law are (i) a

defamatory  statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and

-12-

concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001) (citations omitted). A claim for slander per se is limited to allegations that: "(i) charge the plaintiff with a serious crime; (ii) tend to injure the plaintiff in his or her trade, business or profession; (iii) imply that the plaintiff has a loathsome disease; or (iv) impute unchastity to a woman." *Id.* at 271.

King contends that Plaintiff's claim fails as a matter of law because the statements he allegedly made are statements of opinion, not fact. Under New York law, whether the challenged statements are fact or opinion is a question of law to be decided by the Court. *See Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986). New York courts employ a four-part test to determine whether a statement is an actionable factual assertion or protected opinion. The factors are:

> (1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might "signal to readers or listeners that what is being read or heard is likely to be opinion, not fact."

*600 West 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139 (1992) (citations omitted); *see also Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993) (same). The dispositive inquiry in this regard is "whether a reasonable listener . . . could have concluded that [the defendant] was conveying facts about the plaintiff." *600 West 115th St.*, 80 N.Y.2d at 139. Thus, if a reasonable listener would infer that the speaker knows certain facts, unknown to the audience, which

support the opinion and are detrimental to the plaintiff, the statement is actionable. *See Gross*, 82 N.Y.2d at 153. However, if the statement does not imply the existence of undisclosed underlying facts, the statement is protected. *Id.*

In the present case, Plaintiff alleges that King made the following statements in the presence of Yolanda Adams, a new account representative and subordinate of King, and several other persons whose names are unknown to Plaintiff:

367. KING stated to Adams that [Plaintiff] was a "cancer on the company."

368. KING stated to Adams that [Plaintiff] was "not very bright."

369. KING stated to Adams that [Plaintiff] was "not doing a good job."

370. KING stated to Adams that [Plaintiff] was "mad because [Plaintiff] was not producing for quite some time."

371. KING routinely stated to Adams that [Plaintiff] was discharged for "lack of performance."

372. KING stated to Adams that [Plaintiff's] "customer service and follow up sucked."

373. KING stated to Adams that [Plaintiff] was a "trouble maker and could not be believed."

374. KING stated to Adams that "he received a lot of complaints about [Plaintiff]."

(Am. and Supplemental Compl. ¶¶ 367-374.)

King argues that all of these alleged statements are statements of opinion because they involve King's subjective evaluation of Plaintiff's job performance and, therefore, are incapable of being objectively characterized as either true or false. Under New York law,

statements made by employers criticizing their employees' performance are generally protected

statements of opinion. *See, e.g., Wait v. Beck's N. Am., Inc.*, 241 F. Supp. 2d 172, 183

(N.D.N.Y. 2003) ("Statements that someone has acted unprofessionally or unethically generally

are constitutionally protected statements of opinion."); *Tasso v. Platinum Guild Int'l*, No. 94 Civ.

8288, 1998 WL 841489, at *5-6 (S.D.N.Y. Dec. 3, 1998) (finding statements that plaintiff was

"unethical, untrustworthy and unprofessional" and "incompetent" to be non-actionable opinion);

*Gavenda v. Orleans County*, No. 95 Civ. 0215E, 1997 WL 65870, at *8, (W.D.N.Y. Feb. 10,

1997) (finding statements that plaintiff was "incompetent," and "there had been problems with

her before and she wasn't doing her job right" were non-actionable statements of opinion);

*Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985) (holding that an expression of unhappiness with

an employee's performance is not libelous as a matter of law); *Miller v. Richman*, 592 N.Y.S.2d

201, 203 (4th Dep't 1992) (statement that plaintiff "was one of the worst secretaries at the firm"

held to be nonactionable) (collecting cases); *Williams v. Varig Brazilian Airlines*, 564 N.Y.S.2d

328, 331 (1st Dep't 1991) (finding that statements "concerning plaintiff's work and attitude are

expressions of opinion which, as a matter of law, do not constitute defamatory statements").

      Applying these principles to the instant case, King's alleged statements that

Plaintiff was  "a cancer on the company", "not very bright", "not doing a good job", "not

producing for quite some time",  "a trouble maker and could not be believed", and that her

"customer service and follow up sucked" are all non-actionable statements of opinion.  (Am. and

Supplemental Compl. ¶¶ 367-370, 372-373.)  These statements cannot be understood as

conveying facts about Plaintiff and a reasonable person would think that King was merely

conveying his opinion.

On the other hand, King's alleged statements that "he received a lot of complaints about [Plaintiff]" and that Plaintiff was discharged for "lack of performance", do imply a basis of fact and are capable of being proved true or false. (Am. and Supplemental Compl. ¶¶ 371, 374.) In fact, in his memorandum in support of the present motion, King submits that dismissal is appropriate with regard to these alleged statements because truth is an absolute defense to a claim of slander per se. (King's Mem. in Supp. at 14.) Although an employer's critical assessment of an employee's job performance generally constitutes protected opinion rather than fact, given that the gravamen of Plaintiff's Amended and Supplemental Complaint is that Defendants wrongfully terminated her based upon discrimination and retaliation, it is possible that King's statements in this regard may have been merely pretextual and thus presumptively false. *See Sadowski v. Technical Career Insts., Inc.*, No. 93 Civ. 0455, 1994 WL 603201, at *14 n.2 (S.D.N.Y. Nov. 2, 1994) (denying motion for summary judgment on defamation claim based upon memorandum summarizing reasons for plaintiff's termination because memorandum may have been pretextual and thus false). Moreover, a reasonable person could have concluded that King was conveying facts about Plaintiff. Thus, the Court finds that these statements could form the predicate for a viable slander action and, accordingly, denies King's motion to dismiss the thirteenth cause of action as to paragraphs 371 and 372 of the Amended and Supplemental Complaint.

## V.  *The Sixteenth Cause of Action is Dismissed*

The sixteenth cause of action asserts a claim for intentional infliction of emotional distress against all Defendants based upon all of the allegations in the Amended and Supplemental Complaint. Under New York law, a claim for intentional infliction of emotional

distress requires a showing of: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir.2001). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983), *superseded by statute on other grounds as stated in Leibowitz v. Bank Leumi Trust Co.*, 548 N.Y.S.2d 513 (2d Dep't 1989).

"New York courts are exceedingly wary of claims for intentional infliction of emotional distress in the employment context because of their reluctance to allow plaintiffs to avoid the consequences of the employment-at-will doctrine by bringing a wrongful discharge claim under a different name." *Mariani v. Consolidated Edison Co.*, 982 F. Supp. 267, 275 (S.D.N.Y.1997), *aff'd*, 172 F.3d 38 (2d Cir. 1998); *see also Ponticelli v. Zurich Am. Ins. Group*, 16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998) (collecting cases). "The rare instances where the New York courts have found the complaint sufficient to state an [intentional infliction of emotional distress] claim in the employment context generally involve allegations of more significant battery, or improper physical contact." *Gilani v. National Ass'n of Secs. Dealers, Inc.*, No. 96 Civ. 8070, 1997 WL 473383, at *14 (S.D.N.Y. Aug.19, 1997).

In the present case, Plaintiff's allegations that she was verbally abused, ostracized by co-workers, falsely criticized, directed not to report any complaints under threat of termination do not rise to the level of outrageousness required to state a claim for intentional

infliction of emotional distress.  *See, e.g.*, *Murphy*, 58 N.Y.2d at 293 (finding that plaintiff's allegations that he was transferred and demoted for reporting fraud, coerced to leave by being told that he would never be allowed to advance, discharged and ordered to leave immediately after reporting other alleged in-house illegal conduct, and forcibly and publicly escorted from the building by guards when he returned the next day to pick up his belongings, fell "far short" of the "strict standard" for outrageous behavior).  Accordingly, Plaintiff's sixteenth cause of action is dismissed.

## VI.  *The Court Declines to Dismiss Paragraph 165 of Amended and Supplemental Complaint*

Defendants move to dismiss paragraph 165 of the Amended and Supplemental Complaint under Federal Rule of Civil Procedure 12(f) which provides that the Court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Paragraph 165 alleges that certain e-mails Plaintiff received, stating that her co-workers were "LOL [laughing out loud]" about her loss of commissions and upcoming termination, were sent by "Kathleen Philippi ('Philippi'), PERKINS' former secretary, 'special friend' and/or lover."  (Am. and Supplemental Compl. ¶ 165.)  Defendants contend that this allegation is designed solely to embarrass and harass Defendants and a non-party witness.

"Motions to strike 'are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation.'" *Crespo v. New York City Transit Auth.*, No. 01 CV 0671, 2002 WL 398805, at *11 (E.D.N.Y. Jan. 7, 2002) (quoting *Lennon v. Seaman*, 63 F. Supp. 2d 428, 446 (S.D.N.Y. 1999)).  As the Second Circuit has noted, "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976).

Here, it cannot be said that this allegation can have no bearing on Plaintiff's action as the crux of Plaintiff's claim is that Perkins and the other defendants were wrongfully plotting how to steal Plaintiff's commissions and terminate her position. The fact that Philippi may have been privy to confidential information in this regard may be relevant. Accordingly, Defendants' motion to strike is denied.

## VII.    All Claims Against Conselyea Are Dismissed

Defendants move to dismiss the entire Amended and Supplemental Complaint as to Conselyea arguing that the Court lacks personal jurisdiction over this defendant. On a motion to dismiss, the plaintiff bears the burden of establishing that the Court has jurisdiction over the defendant. *See Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). However, "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (internal quotation marks and citation omitted). A plaintiff can make this showing through his own affidavits and supporting materials. *Whitaker*, 261 F.3d at 208.

Here, Plaintiff asserts two claims against Conselyea, one for slander per se and one for intentional infliction of emotional distress, the latter of which has already been dismissed. It is undisputed that Conselyea was at all times relevant a resident of New Jersey. (Am. and Supplemental Compl. ¶ 26.) Thus, the Court must look to New York's long-arm statute, N.Y. C.P.L.R. § 302(a), to determine whether it may exercise personal jurisdiction over Conselyea. Plaintiff contends that both sections 302(a)(1) and 302(a)(3) are applicable. Section 302(a)(3) specifically exempts from its purview causes of action based on defamation and is

therefore inapplicable.[3]

Section 302(a)(1) provides that New York courts may assert personal jurisdiction over a non-domiciliary defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y.C.P.L.R. § 302(a)(1). The only allegations in the Amended and Supplemental Complaint pertaining to Conselyea provide as follows:

> 381. That heretofore and on or about October 27, 2003, in the State of New Jersey, the Defendant CONSELYEA in the presence and hearing of Adams and several other persons who[se] names are unknown to the Plaintiff, maliciously spoke of and concerning [Plaintiff] false and defamatory words stating that [Plaintiff] "had been fired because of lack of performance."

> 382. This false and defamatory statement was made to members of the staff of PERQ/HCI, an entity which sells readership data [on] all medical publications to all publishing houses and significant advertising agencies, thereby injuring [Plaintiff's] reputation and permanently damaging her ability to obtain substitute employment.

> 383. By reason of the foregoing false and defamatory statements having been spoken of and concerning [Plaintiff] by CONSELYEA, [Plaintiff] was injured in her reputation, business and profession and then suffered great pain and mental anguish to her damage . . . .

(Am. and Supplemental Compl. ¶¶ 381-83.)

Plaintiff's allegations that Conselyea defamed her while in New Jersey clearly do not support a prima facie showing of jurisdiction under section 302(a)(1). Plaintiff asserts new

---

[3] Section 302(a)(3) provides that New York courts may assert personal jurisdiction over a non-domiciliary defendant who "commits a tortious act without the state causing injury to person or property within the state, *except as to a cause of action for defamation of character arising from the act*." N.Y. C.P.L.R. § 302(a)(3) (emphasis added).

facts, however, in her memorandum of law asserting that "Conselyea routinely comes to New York for client meetings, negotiating and executing contracts to supply goods and services in New York; He entertains clients in New York and comes to special business events in New York." (Pl.'s Mem. at 36.) These unsworn statements are not properly before the Court and will not be considered. *See Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 454 (E.D.N.Y. 2004) ("[W]here the allegations in the complaint are insufficient, affidavits must be provided."). Moreover, to the extent Plaintiff includes these facts to support her request for leave to amend, Plaintiff's application is denied, as the facts provided would not cure the jurisdictional defect. Thus, any amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining leave to amend should be denied where the proposed amendment would be futile). Section 302(a) confers jurisdiction over a defendant who transacts business within New York *and* the claim arises out of those transactions. *See Sunward Electronics, Inv. v. McDonald*, 362 F.2d 17, 22 (2d Cir. 2004). Plaintiff's defamation claim does not arise out of Conselyea's purported acts within New York. Accordingly, the Amended and Supplemental Complaint is dismissed in its entirety as to Conselyea and Plaintiff's request to amend the Amended and Supplemental Complaint in this regard is denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the Amended and Supplemental Complaint is DENIED in part and GRANTED in part. Defendants' motion is DENIED to the extent Defendants seek to: (1) dismiss the Amended and Supplemental Complaint as to defendant Romaine Pierson Publishers, Inc. f/k/a Romaine Pierson Acquisition Co.; (2) strike paragraph 165 of the Amended and Supplemental Complaint; and (3) dismiss the

third and fourth causes of action. The motion is GRANTED to the extent Defendants seek to:

(1) dismiss the Amended and Supplemental Complaint as to defendant Eugene Conselyea; and

(2) dismiss the fifth, sixth, and sixteenth causes of action. The motion is GRANTED IN PART

and DENIED IN PART as to the thirteenth cause of action. Plaintiff may move for leave to

amend with regard to her fifth and sixth causes of action ONLY in accordance with this decision.

Finally, the fourteenth cause of action is dismissed based upon Plaintiff's voluntary withdrawal

of this claim.

**SO ORDERED.**

Dated: Central Islip, N.Y.
August 2, 2005

_/s_____
Denis R. Hurley,
United States District Judge