UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LARA CURTO,

        **Plaintiff**,

-against-

MEDICAL WORLD COMMUNICATIONS, INC.,
ROMAINE PIERSON PUBLISHERS, INC., f/k/a
ROMAINE PIERSON ACQUISITION CO., JOHN
J. HENNESSY, JAMES GRANATO, DANIEL
PERKINS, JAMES KING, ROBERT ISSLER, and
EUGENE CONSELYEA,

        **Defendants**.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
**03CV6327 (DRH) (MLO)**
On Defendants' Objections to
Magistrate Judge's Discovery Order
(docs. ##186-188)

**A P P E A R A N C E S:**

**For the Plaintiff:**
**FORCHELLI, CURTO, SCHWARTZ, MINEO, CARLINO & COHN, LLP**
330 Old Country Road
Suite 301
Mineola, NY 11501
By: Andrew E. Curto, Esq.

**MEYER SUOZZI ENGLISH & KLEIN, P.C.**
1505 Kellum Place
Mineola, NY 11501
By: Lois Carter Schlissel, Esq.

**For the Defendants Medical World Communications, Inc., Romaine Pierson, Inc., John J. Hennessy, and Robert Issler:**
**ST. JOHN & WAYNE, L.L.C.**
Two Penn Plaza East
Newark, NJ 07102
By: James P. Anelli, Esq.

**FARRELL FRITZ, P.C.**
1320 Reckson Plaza
West Tower
Uniondale, NY 11556
By: John P. McEntee, Esq.

**HURLEY, Senior District Judge:**

### *INTRODUCTION*

Defendants Medical World Communications, Inc. ("MWC" or the "Company"), Romaine Pierson, Inc., John J. Hennessy, and Robert Issler (collectively, the "Company Defendants"), joined by Defendants James King ("King") and Daniel Perkins ("Perkins"),[1] as well as Defendant James Granato ("Granato"), object to the September 21, 2006 Order of Chief Magistrate Judge Michael L. Orenstein in which he held that two April 2003 draft memoranda (the "April 2003 Memos") authored by Plaintiff Lara Curto ("Plaintiff") and then e-mailed as attachment from herself to herself "are protected from discovery by virtue of the work-product privilege". (Sept. 21, 2006 Tr. at 51:14-15.) For the reasons that follow, (1) the Defendants' objection as to the Magistrate Judge's determination that the April 2003 Memos are work-product is OVERRULED, but (2) the Defendants' objection is SUSTAINED as to their argument of substantial need for the April 2003 Memos. Therefore, this matter is REMANDED to the Magistrate Judge for a Rule 26(b)(3) "substantial need" determination. Upon remand, the Magistrate Judge is also to determine whether Plaintiff has waived her work-product protection of the April 2003 Memos by putting at issue her retaliation claim.

---

[1] Defendants King and Perkins join in the Company Defendants' Objections ("Objection") (doc. # 186-2), amplifying certain arguments advanced by the Company Defendants. (*See* King & Perkin's Mem. Supp. Objections (doc. #187-2).) Similarly, Defendant Granato joins in the Company Defendants' Objections. (*See* Granato's Not. Objections (doc. # 188).) For convenience, the Court will refer to all Defendants collectively as "Defendants" and will refer to the Company Defendants' Objection as that of all Defendants unless otherwise noted.

2

## I. BACKGROUND

This is the second time the Defendants have appealed one of the Magistrate Judge's discovery rulings in this case. Defendants previously objected to the Magistrate Judge's January 18, 2006 Order in which he held that Plaintiff "had not waived her right to assert the attorney-client privilege and work product immunity concerning documents allegedly retrieved from MWC-owned laptop computers used by Plaintiff during her employment with MWC." *Curto v. Medical World Comm'ns, Inc.*, No. 03-cv-6327, 2006 WL 1318387, at *1 (E.D.N.Y. May 15, 2006). In a May 15, 2006 Memorandum & Order, this Court affirmed the Magistrate Judge's Order in its entirety.[2] *See id.* Within that Memorandum & Order, the Court provided a factual background of this case, familiarity with which is assumed. *See id.* at *1-*2. Thus, now, the Court will provide only that background which is relevant to the current appeal.

In July 2006, while attempting to comply with Magistrate Judge Orenstein's January 18, 2006 Order directing Defendants to return all electronic copies of documents identified in

---

[2] On January 18, 2006, the Magistrate Judge held a hearing to determine, *inter alia*, whether Plaintiff waived the attorney-client privilege regarding documents inadvertently provided to Defendants during discover. Applying the relevant case law analysis, the Magistrate Judge:
> concluded that Plaintiff had not waived her right to assert the attorney-client privilege and work product protection with regard to any of the documents retrieved by Defendants from the two laptop computers and directed Defendants to return all such material. He then reserved decision as to whether the documents at issue are protected by the attorney-client privilege or work product immunity.

*Curto*, 2006 WL 1318387, at *3 (internal citations and footnote omitted). In particular, this Court concluded that Magistrate Judge Orenstein's consideration of MWC's enforcement of its computer usage policy was neither clearly erroneous nor contrary to law. *See id.* at *8. Rather, it was a "sub-factor" of the four factors courts consider when determining whether a party has waived its attorney-client privilege or work-product immunity. *See id.*

Plaintiff's initial privilege log, "defendants' forensic expert uncovered two intact (i.e., non-deleted), but non-identical versions of the memo to Jack Hennessey (the April 2003 Hennessey Memos)." (Company Defs.' Obj. at 6-7 (footnote and citation omitted).) Apparently, Plaintiff had forgot about these two memos until their discovery by the Company Defendants. (She previously represented that she had deleted all her files from the company-issued laptop computers.) The Company Defendants informed the Court of this discovery via letter. (*See* Letter from John P. McEntee, Esq., Farrell Fritz, P.C., to Hon. Michael L. Orenstein, Chief U.S. Magistrate Judge, U.S. District Court, Eastern District of New York (July 31, 2006) (doc. #172).) Upon learning of their existence, on August 30, 2006, Plaintiff submitted a supplemental privilege log identifying the April 2003 Memos as privileged. Of note, this supplemental privilege log was submitted after the Magistrate Judge's directive of September 2005 that there would be no further modifications of the initial privilege log.

At the September 21, 2006 status hearing,[3] Magistrate Judge Orenstein heard arguments regarding the April 2003 Memos (which were identified on the supplemental privilege log), associated metadata, and all the documents identified on the initial privilege log. During this hearing, the Magistrate Judge came to understand that the April 2003 Memos were attachments to e-mails sent by Plaintiff to Plaintiff; the supplemental privilege log, while identifying the April 2003 Memos, did not identify the e-mails by which those memos were transmitted. The subject

---

[3] To avoid confusion, the Court notes that Magistrate Judge Orenstein conducted a status hearing in this case on September 21, 200**5**, and conducted another status hearing on September 21, 200**6**. At each of the September 21 hearings, the Plaintiff asserted attorney-client privilege and work-product immunity regarding various documents sought in discovery by Defendants. For the present matter before the Court–the April 2003 Memos identified in the supplemental privilege log–the relevant hearing is the September 21 hearing held in 200**6**.

4

line of the first e-mail read "Andrew re" and the name of the attached file was "Acurto 4 22 03".

Similarly, the subject line of the second e-mail read "Andrew3" and the name of the attached file

was "ACurto rev2 4 22 03". Magistrate Judge Orenstein ruled that regardless of relevant

metadata information

> by virtue of the emails, I'm more than convinced that those documents [*i.e.*, the April 2003 Memos] are protected by work product immunity.
> It points out to me – even though it may be on a letterhead of MWC, it is documents sent by Lara Curto to Lara Curto for the purposes of Andrew; Andrew being Andrew Curto. And revision 2, revision 3 or what it is.

(Sept. 21, 2006 Tr. at 48:19-25; *see also id.* at 51:1-4 ("[I]t is pretty clear to this Court and

certainly the email that I didn't have which Plaintiff failed to send to me with the document,

which would have made it clearer to me, buttresses what this Court thought to begin with [*i.e.*,

that the April 2003 Memos were entitled to work-product immunity].").)

At the hearing, the Defendants requested permission to further brief whether the newly-

discovered April 2003 Memos were entitled to work-product immunity. The Magistrate Judge

denied this request, instructing the parties that the time for briefing on this discovery matter had

long since passed, notwithstanding that the April 2003 Memos were recently uncovered and were

just being considered for the first time at the September 21, 2006 hearing. Relying on *United

States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998), Magistrate Judge Orenstein ultimately found the

April 2003 Memos were entitled to work-product immunity. (*See id.* at 51: 21-23.)

## II. THE PARTIES' POSITIONS ON THE CURRENT OBJECTIONS

As an initial argument, the Defendants assert that the April 2003 Memos are not work-

product documents; rather, they outline a list of Plaintiff's employment concerns. Since they

were not prepared in anticipation of any litigation, they are not entitled to work-product protection. (*See* Company Defs.' Obj. at 11-14.) Alternatively, even if the April 2003 Memos were deemed work-product, Defendants are still entitled to their discovery since they have demonstrated a substantial need for them as impeachment materials. (*See id.* at 14-17.) Similarly, Defendants argue that Plaintiff has waived any work-product protection because

> [b]y asserting a retaliation claim and basing it on alleged protected activity in July 2002, [P]laintiff has squarely put at issue whether or [not] she actually engaged in the alleged protected activity. Since the April 2003 Hennessey memos cast great doubt on that claim, applying work product protection to those documents would deny [D]efendants with vital evidence to their defense. For this reason alone, fairness requires a finding of a waiver and the production of the April 2003 Memos.

(*Id.* at 18.) Finally, Defendants argue waiver of the work-product privilege because Plaintiff did not include the April 2003 Memos in her privilege log until after the close of discovery. (*See id.* at 19-20.)

Unsurprisingly, in her opposition papers, Plaintiff takes the position that the Magistrate Judge's September 21, 2006 Order was neither clearly erroneous or contrary to law because the April 2003 Memos were prepared in anticipation of litigation thereby affording them discovery immunity. (*See* Pl.'s Opp'n at 8-9.) Moreover, Plaintiff argues that the Defendants have not established a substantial need for the Memos and have not demonstrated undue hardship in obtaining equivalent discovery materials since she was available for deposition and will testify at trial. (*See id.* at 9-10.) Additionally, Plaintiff challenges the Defendants' characterization of the April 2003 Memos as contemporaneous accounts of relevant events. (*See id.* at 11.) Since the Memos recount past events "that occurred up to fourteen months before the documents were

6

prepared" (*id.*), there is no substantial need for the April 2003 Memos "in order to gain insight into Plaintiff's past 'contemporaneous' impressions." (*Id.*) Finally, Plaintiff disputes Defendants' assertion that the April 2003 Memos must be disclosed in the interest of fairness as the Memos go directly to core issues. Instead, Plaintiff claims there has been no waiver of work-product immunity as the question "whether or not Plaintiff engaged in the protected activity (complaining of the harassment) is not seriously in issue . . ." (*Id.* at 12.)

In reply, Defendants focus on Plaintiff's deposition testimony, stating, "[P]laintiff testified plainly and without equivocation at her deposition that she did not even begin to contemplate litigation against the [D]efendants until shortly before filing her EEOC Charge in September 2003. (Anelli Decl., Ex. A [331:21-332:24]) No sworn materials to the contrary have been presented to the Court." (Defs.' Reply at 2; *see id.* at 5-6 (doc. #205).) Defendants strongly argue that the April 2003 Memos have "so little resemblance [to] . . . the EEOC Charge, it is difficult to see any plausible connection between them." (*Id.* at 4 and n.5 (stating the April 2003 Memos "are nothing more than factual recitations of workplace events and issues, make no mention of any 'protected activity' and do not attribute any of these workplace events and issue to any 'protected activity.'").) Defendants further assert that the Magistrate Judge failed to perform the required Rule 26(b)(3) "substantial need" analysis and that if he did so, Defendants would have been able to make the required showing. (*See id.* at 6.) According to Defendants, production of the April 2003 Memos will show that Plaintiff's "claims have changed to suit her current legal position and [will] cast serious doubt on her credibility." (*Id.* at 7.) In other words, the Memos are needed to impeach Plaintiff. Finally, Defendants re-assert their waiver argument. (*See id.* at 9-10.)

## III. DISCUSSION

### A. Standard of Review of a Magistrate Judge's Decision

This Court reviews a magistrate judge's decision regarding non-dispositive pretrial matters under a "clearly erroneous or contrary to law" standard. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Discovery matters are generally considered non-dispositive of litigation. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

An order is "clearly erroneous" only if a reviewing court, considering the entirety of the evidence, "'is left with the definite and firm conviction that a mistake has been committed'"; an order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *EEOC v. First Wireless Group, Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004) (quoting *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 320-21 (S.D.N.Y. 2001)). This standard is "highly deferential," "imposes a heavy burden on the objecting party," and "only permits reversal where the magistrate judge abused his discretion." *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002). Because it is clear that a magistrate judge is best qualified to "judge the entire atmosphere of the discovery process," *Bogan v. Northwestern Mut. Life Ins. Co.*, 144 F.R.D. 51, 53 (S.D.N.Y. 1992), his discovery-related rulings are entitled to substantial deference. *See Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 189 (S.D.N.Y. 1988) ("Consistently, it has been held that a magistrate's report resolving a discovery discourse between litigants should be afforded substantial deference and be overturned only if found to be an abuse of discretion.").

## B. *The* United States v. Adlman *Work-Product Standard*

In *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) ("*Adlman II*"), the Second Circuit was presented with a question of first impression, namely, "whether Rule 26(b)(3) is inapplicable to a litigation analysis prepared by a party or its representative in order to inform a business decision which turns on the party's assessment of the likely outcome of litigation expected to result from the transaction." 134 F.3d at 1197. In answering that question, the Circuit Court articulated its interpretation of the realm of protection afforded by Rule 26(b)(3) of the Federal Rules of Civil Procedure. In *Adlman II*, the Circuit Court adopted the "because of" approach to providing work-product protection, *i.e.*, because of existing or expected litigation a document may be entitled to work-product immunity. *See* 134 F.3d at 1197-98. This expansive approach provided greater protection than those courts following the "primarily to assist in litigation" formulation. *See id.* at 1198.

> We believe that a requirement that documents be produced primarily or exclusively to assist in litigation in order to be protected is at odds with the text and the policies of the Rule. Nowhere does Rule 26(b)(3) state that a document must have been prepared to aid in the conduct of litigation in order to constitute work product, much less primarily or exclusively to aid in litigation. Preparing a document "in anticipation of litigation" is sufficient.
>> The text of Rule 26(b)(3) does not limit its protection to materials prepared to assist at trial. To the contrary, the text of the Rule clearly sweeps more broadly. It expressly states that work-product privilege apples not only to documents "prepared . . . for trial" but also to those prepared "in anticipation of litigation." . . . The fact that documents prepared "in anticipation of litigation" were also included confirm that the drafters considered this to be a different, and broader category. Nothing in the Rule states or suggest that documents prepared "in anticipation of litigation" with the purpose of assisting in the making of a business decision do not fall within its scope.

*Id.* at 1198-99. The *Adlman II* Court also acknowledged that "the Rule generally withholds

9

protection for documents prepared in anticipation of litigation if the adverse party shows 'substantial need' for their disclosure and inability to obtain their equivalent by other means . . . ." *Id.* at 1199. Even so, a court is mandated to "'protect against disclosure of the mental impression, conclusions, opinions, or legal theories of . . . [a party or its representative] concerning the litigation.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(3)).

After a thorough discussion of the merits of providing work-product immunity to "documents analyzing anticipated litigation, but prepared to assist in a business decision rather than to assist in the conduct of litigation," *id.* at 1201-02,[4] the Second Circuit held that such a document "does not lose protection under this [*i.e.*, the "because of"] formulation merely because it is created in order to assist with a business decision." *Id.* at 1202.[5] Important to the instant appeal, the Circuit Court also instructed:

> [A]lthough a finding under this test that a document is prepared because of the prospect of litigation warrants application of Rule 26(b)(3), this does not necessarily mean that the document will be protected against discovery. Rather, it means that a document is eligible for work-product privilege. The district court can then

---

[4] The Second Circuit relies heavily on Wright & Miller. *See, e.g., Adlman II*, 134 F.3d at 1202 (citing Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024, at 343). Indeed, the Second Circuit dubs its expansive application of Rule 26(b)(3) "the Wright & Miller 'because of' test". *Id.* at 1203.

[5] The Circuit court also emphasized

> [T]he "because of" formulation that we adopt here withholds protection from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation. It is well established that work-product privilege does not apply to such documents.

*Adlman II*, 134 F.3d at 1202 (citing Fed. R. Civ. P. 26(b)(3), Advisory Committee's note) (further citations omitted).

> assess whether the party seeking discovery has made an adequate showing of substantial need for the document and an inability to obtain its contents elsewhere without undue hardship. The district court can order production of the portions of the document for which a litigant has made an adequate showing.

*Id.* at 1202-03.

### C. *Substantial Need and Inability to Obtain Without Undue Hardship*

"[T]he work product doctrine classifies documents into two categories: 'non-opinion' work product and 'opinion' work product." *NXIM Corp. v. O'Hara*, ___ F.R.D. ___, 2007 WL 632708, *16 (N.D.N.Y. Feb. 9, 2007). This distinction is relevant when a party seeks discovery of a work-product document because the classification of the document determines the showing necessary to warrant disclosure. Thus,

> [f]or "non-opinion" work product, the party seeking this information must show a substantial need for the document and undue hardship to acquire the document or its substantial equivalent by other means. On the other hand, "opinion" work product requires a higher protection to the extent that the requesting party has to demonstrate extraordinary justification before the court will permit its release.

*Id.* (citing *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001), and *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981)). Therefore, where one seeks discovery of "opinion" work-product, *i.e.*, "work-product that shows 'mental impressions, conclusions, opinions, or legal theories of an attorney,'" *In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000) (quoting Fed. R. Civ. P. 26(b)(3)), the Second Circuit has held "that 'at a minimum such material is to be protected unless a highly persuasive showing [of need] is made.'" *Id.* (quoting *Adlman II*, 134 F.3d at 1204; citing *Upjohn*, 449 U.S. at 401-02) (brackets in *In re Grand Jury Proceedings*)).

As to "non-opinion" work-product,[6] one magistrate judge in this District has stated:

> "Substantial need is not evaluated in a vacuum, and in order to overcome work product protection, [a party] must demonstrate that [he] cannot obtain the substantial equivalent of the information [he] seeks." *E.E.O.C. v. Carrols Corp.*, 215 F.R.D. 46, 52 (N.D.N.Y. 2003) (citing *Pillsbury*, 888 F.2d at 12). That does not mean that a party seeking the document must show an absolute impossibility, but rather that it is significantly more difficult, time-consuming or expensive to obtain the information from another source.

*Garnier v. Illinois Tool Works, Inc.*, No. 04-cv-1825 (NGG)(KAM), 2006 WL 1211201, at *2 (E.D.N.Y. May 4, 2006) (citing *Secs. & Exch. Comm'n v. Thrasher*, No. 92-cv-6987, 1995 WL 46681, at *9 (S.D.N.Y. Feb. 7, 1995)) (brackets in *Garnier*).

### D.     *Waiver of Work-Product Protection*

"Waiver of work product protection may result from a party's injection of an issue into the litigation that, in fairness, required the party to disclose otherwise protected material." *Ruotolo v. City of New York*, No. 03-cv-5045, 2005 WL 823015 (S.D.N.Y. Apr. 7, 2005) (citing *In re Grand Jury Proceeding*, 210 F.3d at 182 ("This court has recognized that implied waiver may be found where the privilege holder 'asserts a claim that in fairness requires examination of protected communications.'" (quoting *United States v. Bilserian*, 926 F.3d 1285, 1292 (2d Cir. 1991))). Thus, "[a]s in the attorney-client context, fairness and prejudice concerns define the scope of any work product waiver." *McGrath*, 204 F.R.D. at 244 (citing *In re Grand Jury Proceeding*, 219 F.3d at 191; *Chase Manhattan Bank v. Turner & Newall*, 964 F.2d 159, 163 (2d

---

[6] Some courts refer to "non-opinion" work-product as "fact work-product". *See, e.g., McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 243 (E.D.N.Y. 2001) ("There are two types of work product: (1) ordinary fact work product; and (2) core work product consisting of an attorney's mental impressions, conclusions, opinions, or legal theories." (citing *In re Grand Jury Proceedings*, 219 F.3d at 190)).

12

Cir. 1992) (recognizing fairness doctrine)). Courts within the Second Circuit will find "at-issue" waiver when the following factors are present:

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (a) application of the privilege would have denied the opposing party access to information vital to [its] defense.

*Sicurelli v. Jeneric/Pentron Inc.*, No. 03-cv-4934, 2006 WL 1329709, at *4 (E.D.N.Y. May 16, 2006) (Matsumoto, M.J.) (quoting *Ruotolo*, 2005 WL 823015, at*2-*3 (further citation omitted)).

### E. The Instant Case

#### 1. Classification of the April 2003 Memos as Work-Product

Having considered the entirety of the evidence in record, particularly the transcript of the September 21, 2006 status hearing and the April 2003 Memos themselves (reviewed *in camera* by this Court), the Court is not left with the definite and firm conviction that Magistrate Judge Orenstein has committed a mistake in classifying the subject Memos as work-product. Here, Magistrate Judge Orenstein is very familiar with the discovery that has occurred to date. Indeed, discovery in this case has been protracted and the Magistrate Judge has been required to resolve similar discovery disputes. In fact, other, later versions of the subject Memos have been the subject of prior discovery disputes. Thus, there is no doubt that Magistrate Judge Orenstein was and is best qualified to judge the entire atmosphere of the discovery process here, including disputes over these later-revealed April 2003 Memos, and that this discovery-related ruling is entitled to substantial deference.

Moreover, it is clear from the record, that Magistrate Orenstein carefully considered not only the April 2003 Memos themselves, but the e-mails by which the Memos were transmitted

from the Plaintiff's work e-mail account to her private e-mail account. Indeed, it was these e-mails that convinced or "buttressed" the Magistrate Judge's determination that the April 2003 Memos were eligible for work-product immunity. The subject line of the e-mails were "Andrew re" and "Andrew3", with the attached files bearing the names "Acurto 4 22 03" and "ACurto rev2 4 22 03". This information in conjunction with the fact that the Plaintiff's husband–Andrew–is one of her attorneys in this case, helped persuade the Magistrate Judge that the attached files, *i.e.*, the April 2003 Memos, were at the time of their creation and transmittal, work-product. Furthermore, and contrary to Defendants' assertion otherwise, because there is evidence that the April 2003 Memos and later versions thereof morphed into Plaintiff's EEOC complaint (among others), it is not clearly erroneous or contrary to law for the Magistrate Judge to have found that the Memos were prepared because of litigation.

Given the concomitant factors of high deference to a magistrate judge's discovery ruling in general, the significant involvement of Magistrate Judge Orenstein in the discovery process in this case to date, and the broad protective coverage of Rule 26(b)(3), as articulated in *Adlman II* and upon which Magistrate Judge Orenstein explicitly relied, this Court is satisfied that the classification of the April 2003 Memos as work-product was not an abuse of discretion.

2.  *Determination of Substantial Need and Inability to Obtain Without Undue Hardship*

While the Magistrate Judge determined that the April 2003 Memos are eligible for work-product immunity, he did not indicate whether the Memos were "opinion" work-product or "non-opinion" work-product. This creates a dilemma since the Defendants seek discovery of the April 2003 Memos notwithstanding the determination that they are work-product. As discussed earlier, a classification of the work-product document is essential to determine the appropriate

burden of proof a party must meet in order to warrant the disclosure of the document claimed to be protected.

Certainly, this Court could make the required classification determination. (Indeed, as previously mentioned, the Court has reviewed *in camera* the April 2003 Memos.) However, recognizing that the Magistrate Judge "is best qualified to judge the entire atmosphere of the discovery process," *Bogan*, 144 F.R.D. at 53, especially here since Magistrate Judge Orenstein has been overseeing the discovery process of this case for years (thus, at a minium, making him more familiar with the case's discovery process), and in the interest of consistency in case management, it is prudent for the Magistrate Judge to make this classification in the first instance. Once the Magistrate Judge determines under which category the April 2003 Memos fall, he will be able to apply the proper burden of proof and then determine whether the Defendants have demonstrated the requisite substantial need for the April 2003 Memos in the preparation of their case and whether the Defendants are unable, without undue hardship, to obtain the substantial equivalent of the April 2003 Memos by other means.

The record demonstrates the Defendants sought to make a proffer of substantial need at the September 21, 2006 hearing, but that the Magistrate Judge foreclosed consideration of those arguments. Further, in their current Objections to this Court, Defendants argue that they seek disclosure of the April 2003 Memos for impeachment purposes. (*See* Company Defs.' Obj. at 16-17.) Indeed, there is case law supporting this position. *See, e.g., Johnson v. Bryco Arms*, No. 03-cv-2582, 2005 WL 469612 (E.D.N.Y. Mar. 1, 2005) (Weinstein, Sr. J.) (recognizing that work-product document may be discoverable as "a critical piece of impeachment material, particularly if . . . the witness's subsequent depositions have suggested inconsistencies or gaps in

memory"); *A.J.A. Holdings, S.A. v. Lehman Bros., Inc.*, 97-cv-4978, 2002 WL 31385824, at *9 (S.D.N.Y. Oct. 21, 2002) (assuming that "impeachment material can, in some circumstances, support a claim of substantial need sufficient to pierce a claim of work product," but such need will be evaluated against availability of other impeachment material available).

As stated by Senior Judge Weinstein, though, "it is worth repeating that the work-product privilege is *highly individualized in application*, and inevitably turns on the factual particulars of the case at bar." *Johnson*, 2005 WL 469612, at *5 (emphasis added). Thus, (1) because of the highly individualized nature of the work-product analysis; (2) because of Magistrate Judge Orenstein's extensive familiarity and knowledge of the discovery process in this case (in particular, the availability of other materials that may be used as impeachment material); and (3) considering the principles of fairness, in light of the late discovery of the April 2003 Memos by Defendants (through no fault of the Defendants), Defendants should be heard on their arguments of substantial need and undue hardship and such arguments should be presented in this instance to the Magistrate Judge. To the extent that the Magistrate Judge did not hear these arguments and perform the corresponding requisite analysis on September 21, 2006, his September 21, 2006 Order was contrary to law. *See, e.g., Curto*, 2006 WL 1318387, at *4 (quoting *First Wireless Group, Inc.*, 225 F.R.D. at 405).

    3.    *Determination of "At-Issue" Waiver*

For substantially the same reasons stated above, the Court believes the Magistrate Judge should make the initial determination whether Plaintiff has put at issue the April 2003 Memos by asserting a retaliation claim. Such a determination, by its very nature, is case-specific. Given Magistrate Judge Orenstein's superior familiarity with the instant case's discovery process, it

makes eminent good sense for him to determine whether there has been "at-issue" waiver here.

## *CONCLUSION*

For the foregoing reasons, the Court finds:

(1)  Magistrate Judge Orenstein's determination that the April 2003 Memos are protected under the work-product doctrine is not clearly erroneous; therefore, Defendants' objection on this basis is OVERRULED;

(2)  To the extent the Magistrate Judge forestalled consideration of Defendants' arguments of substantial need and undue hardship, non-consideration of those arguments were contrary to Rule 26(b)(3), thereby warranting a remand; therefore, Defendants' objection on this basis is SUSTAINED; and

(3)  The Court further finds that, upon remand and in the interest of fairness, the Magistrate Judge is to determine whether an "at-issue" waiver has occurred regarding the April 2003 Memos.

**SO ORDERED.**

Dated: Central Islip, New York
May 15, 2007            /s/
                        Denis R. Hurley
                        United States Senior District Judge